## 54308. BROOKS v. THE STATE.

BANKE, Judge.

The defendant appeals his convictions for carrying a concealed weapon, criminal use of an article with an altered identification mark, and simple assault. His primary contention is that evidence discovered during an illegal detention by the arresting officer was improperly introduced against him.

At approximately ten o'clock in the morning on February 24, 1976, an Atlanta police officer spotted the defendant looking into the window of a Gremlin automobile in a shopping center parking lot. The officer testified that the defendant looked up, saw him, immediately went to a nearby car whose engine appeared to be running, and drove off. The officer drove by the Gremlin but observed no signs of tampering. Nevertheless, he pursued the defendant because, in the officer's words, "he was acting suspicious . . . I thought that he might — that he was fixing to go into the Gremlin. That he was about to, maybe."

After he stopped the defendant's car, the officer observed that the defendant's automobile inspection sticker was expired and that it was taped onto the windshield. He asked the defendant for his driver's license, and the defendant answered that he did not have one. The officer asked for some identification and was presented with a credit card in the name of Howard H. Grayson. He asked the defendant his middle name, and was told "James." At this point, the officer instructed the defendant to get out of the car and began to frisk him for

the First Offender Act (Ga. L. 1968, p. 324), and Goerndt was placed on 12 months probation and fined $150.

weapons. When he felt a pistol in a shoulder holster inside the defendant's jacket, the defendant turned and, according to the officer, attempted to grab the officer's pistol. The officer drew his pistol himself and shot the defendant.

1. The defendant moved to suppress the pistol on the grounds that it was seized as the result of an illegal detention. The motion was denied. We reverse.

"To justify a warrantless intrusion of this nature, the state must be able to point to specific and articulable facts, which, together with rational inferences drawn therefrom, reasonably warrant the intrusion. [Cits.]" *Brisbane v. State,* 233 Ga. 339, 341 (211 SE2d 294) (1974). In those cases in which this court has approved investigatory detentions made without probable cause, the police have had some reason to suspect that criminal activity had either taken place, was in progress, or was about to take place at the time of the detention. See, e. g., *Lofton v. State,* 122 Ga. App. 727 (178 SE2d 673) (1970); *Mitchell v. State,* 131 Ga. App. 95 (205 SE2d 26) (1974); *State v. Smith,* 137 Ga. App. 101 (223 SE2d 30) (1975); *Franklin v. State,* 143 Ga. App. 3 (237 SE2d 425) (1977).

No facts appear in this case which would have made such a suspicion reasonable. The defendant was merely looking into a car window in an open parking lot in broad daylight. There was no evidence that any thefts were being investigated or that any had been reported in the area. Prior to entering into pursuit of the defendant, the officer had already assured himself that no attempt had been made to break into the Gremlin. Finally, there is no contention that the defendant was guilty of any traffic violation or that he was stopped for the purpose of checking his license or vehicle identification. The only factor offered by the state in support of the detention is the officer's belief that the defendant "may have intended some criminal act." However, it is no crime simply to possess criminal intent, absent the union of some act in furtherance of that intent. See Code §§ 26-601, 26-1001, 26-3201.

As stated by this court in *Brooks v. State,* 129 Ga. App. 109, 111 (198 SE2d 892) (1973): "[W]here no circumstances at all appear which might give rise to an

articulable suspicion (less than probable cause, but greater than mere caprice) that the law has been violated, the act of following and detaining a vehicle and its occupants must be judged as an impermissible intrusion on the rights of the citizen. Where this occurs, the penalty exacted by the law is that evidence turned up as a result of such intrusion may not be introduced against the defendant on the trial of his case." See *Smith v. State,* 140 Ga. App. 94 (1) (230 SE2d 101) (1976); *Holder v. State,* 141 Ga. App. 426 (233 SE2d 501) (1977); *Carter v. State,* 143 Ga. App. 166 (1977). See generally *Brisbane v. State,* 233 Ga. 339, supra; Terry v. Ohio, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

2. The above ruling requires that the convictions for criminal use of an article (i.e., the pistol) with an altered identification mark and for carrying a concealed weapon be reversed since they rest entirely on the introduction into evidence of the pistol discovered when the defendant was frisked.

3. The conviction for simple assault does not rest on any evidence uncovered as a result of the detention and is supported by both the officer's and the defendant's testimony. The officer testified that as he was frisking the defendant, the defendant turned and began to struggle with him in an apparent attempt to grab his (the officer's) service pistol. The defendant does not deny that such a struggle took place, but states that his intention was merely to prevent the officer from drawing the pistol. Given the potential for violence in this type of confrontation, we cannot say that the jurors were without sufficient evidence upon which to base a finding that the defendant's action placed the officer "in reasonable apprehension of immediately receiving a violent injury." Code Ann. § 26-1301 (b). The conviction for simple assault was, therefore, authorized. See generally *Thomas v. State,* 99 Ga. 38 (2) (26 SE 748) (1896); *Hise v. State,* 127 Ga. App. 511 (194 SE2d 274) (1972).

In making this ruling, we express no opinion on whether the subsequent use of force against the defendant was justifiable.

4. The trial court did not err in refusing to give the defendant's requested charges relating to the right to

resist an unlawful arrest. In resisting an unlawful arrest, one is justified in using force, but only such force as is reasonably necessary to prevent the arrest, i.e., force proportionate to the force being used in the unlawful detention. See *Griffin v. State,* 183 Ga. 775, 779 (4) (190 SE 2) (1937); *Mullis v. State,* 196 Ga. 569, 579 (7) (27 SE2d 91) (1943). Thus, an arrestee is never justified in assaulting an arresting officer unless the officer has assaulted him first, i.e., placed him in "reasonable apprehension of immediately receiving a violent injury." Code Ann. § 26-1301 (b). Since the record in this case contains no evidence that the arresting officer assaulted the defendant prior to their struggle over the pistol, the legality of the arrest was not relevant to the assault charge.

5. The defendant contends that a portion of the district attorney's closing argument was prejudicial and that the trial judge should have intervened to prevent it. However, no objection was made at trial; therefore, no basis exists for review of the issue on appeal. See *Joyner v. State,* 208 Ga. 435 (2) (67 SE2d 221) (1951); *Allen v. State,* 233 Ga. 200 (2) (210 SE2d 680) (1974).

6. The remaining enumerations have either been abandoned or rendered moot by the foregoing and need not be considered.

*The judgment of conviction of simple assault is affirmed; the judgments of conviction of carrying a concealed weapon and criminal use of an article with altered identification mark are reversed. Shulman and Birdsong, JJ., concur.*

SUBMITTED SEPTEMBER 14, 1977 — DECIDED NOVEMBER 22, 1977.

*Buffington & West, Thomas M. West,* for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Donald J. Stein, Assistant District Attorneys,* for appellee.