## 65292. THE STATE v. ROBERSON.

CARLEY, Judge.

The state appeals from the grant of appellee's motion to suppress evidence.

The facts are undisputed and are as follows: Police officers set up a road block for purposes of conducting a routine driver's license check. One of the automobiles stopped was being driven by Homer Robinson. Appellee, Taft Roberson, was a passenger in Mr. Robinson's car. The officer asked for and received Mr. Robinson's driver's license. Nothing was out of order in that regard. However, the officer recognized appellee as being one of two Roberson brothers, either Taft or Math. The officer also knew that Math Roberson had escaped from jail at some previous time, but did not know whether Math had been captured or was still at large. To establish appellee's identity, the officer asked him whether he was Taft or Math Roberson. Appellee responded that his name was "Ronnie." Mr. Robinson then corroborated appellee's identity as "Ronnie." However, the officer knew that appellee's name was not Ronnie, but that it was either Taft or Math Roberson. Acting on the knowledge that he had been told an untruth concerning appellee's name, the officer arrested Mr. Robinson and appellee. A consequent search of appellee and an inventory of the car revealed controlled substances, diazepam and marijuana. It was these controlled substances which were the basis for appellee's subsequent indictment and, based upon the assertion that this arrest was illegal, the evidence which appellee successfully moved to suppress.

1. It is clear that the original detention of the automobile and of appellee effectuated by the roadblock was valid. *State v. Swift,* 232

Ga. 535 (207 SE2d 459) (1974). The issue appears to be whether the officer, after determining that Mr. Robinson's driver's license was in order, was further authorized to detain appellee, the passenger, and to ask his name. Appellee asserts in his brief that "[t]he question which must be answered in this case is as follows: Under the facts of this case did the police officer act in the lawful discharge of his duty when he interrogated appellee concerning his identity so that the police officer was in a position to arrest him for violating [OCGA § 16-10-25 (Code Ann. § 26-2506)] and conduct a search as an incident thereto?" Appellee takes the position that, under the circumstances, the officer was not authorized to ask his name and that, when the officer did so, he consequently was not in the "lawful discharge of his official duties . . ." OCGA § 16-10-25 (Code Ann. § 26-2506). It being no crime to lie to an officer when he is not lawfully discharging his official duties, appellee contends that his arrest and the ensuing search were illegal. The trial court agreed and sustained appellee's motion to suppress in an order holding that "[t]he questioning of [appellee] was unreasonable and violative of his Fourth and Fourteenth Amendment rights under the United States Constitution and similar provisions in the Georgia Constitution . . . and statutory provisions contained in [OCGA §§ 17-5-1 and 17-5-30 (Code Ann. §§ 27-301 and 27-313)]. In view of the facts together with rational inferences drawn therefrom, the intrusion was not reasonably warranted."

Terry v. Ohio, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968) is "the progenitor of the doctrine that a police officer may make 'an intrusion short of arrest' where he has 'specific and articulable facts' which reasonably warrant such intrusion. Thus, the individual's 'freedom to use public highways' is circumscribed by the state's police power when the officer has 'specific and articulable facts' which warrant a stop of a vehicle to investigate the circumstances which provoke a reasonable and founded suspicion. [Cit.] . . . Terry recognized it could be the essence of good law enforcement practice to adopt an intermediate response by a 'brief stop' of the suspicious person 'to maintain the status quo momentarily, while obtaining more information' to confirm or dispel the information received. [Cit.]" *Radowick v. State,* 145 Ga. App. 231, 233 (244 SE2d 346) (1978).

The application of the above stated legal principles to the facts of the instant case clearly demonstrates that, based upon his personal knowledge concerning the escape of Math Roberson and his recognition of appellee as being either Math or Math's brother, Taft, the officer had an "articulable suspicion" that the passenger might be an escaped convict. See generally *Reese v. State,* 145 Ga. App. 453 (1)

(243 SE2d 650) (1978); *State v. High,* 145 Ga. App. 772, 773 (2) (244 SE2d 888); *Starr v. State,* 159 Ga. App. 386 (283 SE2d 630) (1981). Compare *Holtzendorf v. State,* 125 Ga. App. 747 (188 SE2d 879) (1972); *Hill v. State,* 140 Ga. App. 121 (230 SE2d 336) (1976); *Brooks v. State,* 144 Ga. App. 97 (240 SE2d 593) (1977). "The officer was aware that a crime had been committed and, based upon information supplied to him, had a 'founded suspicion' that [appellee] might be involved. [Cits.]" *Watson v. State,* 159 Ga. App. 618, 619 (284 SE2d 636) (1981). This articulable suspicion, short of probable cause to arrest appellee as being the escaped convict, authorized a brief detention " 'to investigate the circumstances which provoke a reasonable and founded suspicion' on the part of police. ' "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." (Cit.) . . .' [Cit.]" *State v. High,* 145 Ga. App. at 774, supra.

Appellee asserts that rather than asking his name, it would have been more "reasonable" and less intrusive for the officer to act on his suspicions by radioing police headquarters in order to determine if Math Roberson was still at large. If such a procedure had been followed, the officer would have discovered that Math had been recaptured and, presumably, there would then have been no need to determine appellee's identity. "[T]he Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest, to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, *in order to determine his identity* or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. [Cits.]" (Emphasis supplied.) *State v. Misuraca,* 157 Ga. App. 361, 365 (276 SE2d 679) (1981). " '[S]ince . . . investigation and *questioning* are necessary elements of crime prevention and detection, the exigencies of the situation as they reasonably appear at the time must dictate the extent of intrusion into constitutionally protected areas. *Momentary detention and questioning are permissible* if based upon specific and articulable facts which, taken together with rational inferences from those facts, justify a *reasonable course of inquiry* not based on mere inclination, caprice, or harassment . . .' [Cit.]" (Emphasis supplied.) *Stiggers v. State,* 151 Ga. App. 546, 547 (260 SE2d 413) (1979). Accordingly, we find that asking appellee his name was clearly a "reasonable" action for the officer to take in making his

authorized-but-limited investigation concerning the identity of the passenger of the vehicle. Indeed, because the officer's authority was limited, the potential for "unreasonableness" would have been more inherent in the delay occasioned by following appellee's suggested procedure of radioing in for information than in the procedure which was followed of addressing a direct inquiry to the suspicious individual himself. See *Radowick,* 145 Ga. App. at 236 (3), supra.

Appellee's further contention that he should have been given his Miranda warnings before being asked to identify himself is without merit. See *Futch v. State,* 145 Ga. App. 485, 488 (3) (243 SE2d 621) (1978).

2. When the officer asked appellee his name, a response known to the officer to be false was given. This authorized the arrest of appellee for violating OCGA § 16-10-25 (Code Ann. § 26-2506) and the fruits of a search conducted pursuant to this legal arrest would not be inadmissible at appellee's trial. See generally *Mitchell v. State,* 136 Ga. App. 658 (1) (222 SE2d 160) (1975).

The trial court erred in granting appellee's motion to suppress.

*Judgment reversed. Shulman, C. J., and Quillian, P. J., concur.*

DECIDED FEBRUARY 25, 1983 —
REHEARING DENIED MARCH 10, 1983 — ▬▬▬▬▬▬

*Willis B. Sparks III, District Attorney, Vernon R. Beinke, Thomas J. Matthews, Assistant District Attorneys,* for appellant. *Russell M. Boston,* for appellee.