## 70696. HOLBROOK et al. v. THE STATE.
(339 SE2d 346)

BENHAM, Judge.

Appellant Hubert Holbrook and his son Gary appeal from their convictions for possessing cocaine and marijuana with intent to dis-

tribute. They question the sufficiency of the evidence presented against them and enumerate as error the denial of their motion to suppress.

1. A Dalton police officer received a report of suspicious behavior on the part of appellant Hubert Holbrook from one of the desk clerks at the motel where appellants were registered guests. The police officer computer-checked the license plate numbers of appellants' cars and found one tag not on file and the other not registered to appellants. Noting the Floyd County stickers on the license plates, the officer contacted the Rome police and was told to use caution in approaching appellants; that they might be involved in drug trafficking; that Hubert Holbrook was known to carry a weapon and was considered a dangerous man. The officer was also told that Hubert Holbrook had two sons, one of whom was an escapee from the Georgia State Prison at Reidsville. A detective called the FBI and was told the Holbrooks were frequent drug traffickers and that Russell Holbrook, Hubert's son and Gary's brother, was a Reidsville escapee. The officers who later conducted the roadblock were told by their superior that Russell, the escapee, was at the motel with his father and brother and a bank robbery might be in the offing. Two detectives surveilled the motel to maintain the status quo until the information concerning Russell could be confirmed. However, when the desk clerk reported to police that appellants were checking out of the motel, the police set up a roadblock at the motel exit. The first auto stopped was driven by appellant Gary Holbrook, who was asked to exit the car and sit in a patrol car for his protection. His automobile was hidden so as not to arouse the suspicions of the elder Holbrook, who was approaching the roadblock. Hubert Holbrook was stopped when he reached the roadblock, and a .38 revolver was seen between the driver's seat and door when he exited the car at police request. A search of his car revealed cocaine and a cocaine analysis kit. Currency found in Gary's possession also contained traces of cocaine.

Having discerned that Gary Holbrook, the driver of the first car, was not the Holbrook son who had escaped from prison, the police had no reason to detain him further. However, in light of the police reports that the Holbrooks were armed and dangerous and the fact that a weapon had been found in the other Holbrook car, police conducted a weapons search of Gary's automobile before returning it to him. Spoons with a white powdery residue and syringes were discovered in a grocery bag on the floorboard. A more extensive search uncovered hashish.

Appellants argue that the police were not authorized to stop the Holbrook vehicles and make the warrantless searches which uncovered the contraband and paraphernalia that led to the charges against appellants. We disagree with appellants' position.

"A police officer is authorized to make a brief, investigatory detention of an individual for the purpose of maintaining the status quo and obtaining information, provided he can point to specific and articulable facts which, together with rational inferences drawn therefrom, reasonably warrant such an intrusion. See *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). [Cits.] 'What is demanded of the police officer, as the agent of the state, is a founded suspicion, some necessary basis from which the court can determine that the detention was not arbitrary or harassing.' [Cit.]" *Smith v. State*, 165 Ga. App. 333 (1) (299 SE2d 891) (1983). However, "[t]he Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response . . . A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. [Cit.]" *Stiggers v. State*, 151 Ga. App. 546, 547 (260 SE2d 413) (1979). Furthermore, we, as an appellate court, must constantly keep in mind that "the trial court's decision on questions of fact and credibility at a suppression hearing must be accepted unless clearly erroneous. [Cits.]" *Woodruff v. State*, 233 Ga. 840 (3) (213 SE2d 689) (1975). With the latter standard in mind, our application of the *Terry* and *Smith* standards leads to the conclusion that the trial court correctly denied the motion to suppress.

The information Dalton police received from Rome police and the FBI authorized an investigation into the activities of the Holbrooks. The officers who manned the roadblock were authorized to rely upon their superior officers' determination that circumstances required an investigative stop of the Holbrook vehicles. *Griggs v. State*, 167 Ga. App. 581 (1) (307 SE2d 75) (1983). The information the Dalton officers had compiled about the Holbrooks constituted an articulable suspicion that an escaped convict might be traveling with them and authorized a brief detention. *State v. Roberson*, 165 Ga. App. 727 (1) (302 SE2d 591) (1983). The fact that hearsay information initiated the police investigation does not nullify the results of the investigation. *Griggs v. State*, supra. The sighting of the revolver in Hubert Holbrook's car and the decision to detain him for possible charges connected with the weapon authorized the search of his automobile. *Michigan v. Long*, 463 U. S. 1032 (103 SC 3469, 77 LE2d 1201) (1983); *McDowell v. State*, 172 Ga. App. 643 (1) (324 SE2d 211) (1984).

While, admittedly, the police had no reason to further detain Gary Holbrook, they had information that he was on probation and

that the Holbrooks were armed, and they had just discovered a weapon in Hubert's car. Since the officers possessed "a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[ed]' the officer[s] in believing that the suspect is dangerous and the suspect may gain immediate control of weapons" (*Michigan v. Long*, supra, 463 U. S. at 1049), it was not unreasonable or illegal for the police to search the passenger compartment of Gary's vehicle for weapons prior to returning it to him. The police had reasonable and articulable facts which warranted the stop of the Holbrook vehicle; the sighting of the revolver in Hubert's car, coupled with the knowledge the police had, justified the search of Hubert's car; and specific and articulable facts that Gary was dangerous and might gain immediate control of a weapon justified the search of his car. The trial court did not err when it denied appellants' motion to suppress.

2. In a bench trial, each appellant was found guilty of possession of marijuana with intent to distribute and possession of cocaine with intent to distribute. On appeal, appellants question whether the evidence was sufficient to support the four verdicts.

When the officers searched the automobile driven by Hubert Holbrook, they uncovered several items containing a white powder residue; a used cocaine analysis field kit; a plastic bag containing approximately 10 grams of cocaine; and a plastic bag containing two "chunks" of hashish. In the car driven by Gary was found a bag and four spoons containing white powder residue; two bags containing approximately one pound of hashish; and a container holding green leafy material and rolling papers. A search of Gary's person uncovered two motel envelopes containing $10,750. A motel employee testified that Hubert had placed two motel envelopes, each containing "a thick stack" of bills, into one of the motel's safe deposit boxes. Traces of cocaine were found on the currency when it underwent chemical analysis at the State Crime Laboratory.

The quantity of the contraband found, as well as the presence of the cocaine analysis field kit, the cocaine-tainted spoons, the rolling papers and related drug paraphernalia, "gave rise to a reasonable inference that defendant[s] had the intent to distribute the marijuana [and cocaine]." *Allen v. State*, 158 Ga. App. 691 (2) (282 SE2d 126) (1981). See also *Sankey v. State*, 167 Ga. App. 224 (306 SE2d 357) (1983); *Wright v. State*, 154 Ga. App. 400 (1) (268 SE2d 378) (1980). The family relationship existing between appellants, the evidence of their recent close association, and the transfer of the cocaine-tainted currency from Hubert to Gary are facts from which the trier of fact could reasonably have concluded that appellants were engaged in a joint effort to distribute the contraband. The evidence summarized above was sufficient for a rational trier of fact to find each appellant

guilty beyond a reasonable doubt of possession with intent to distribute cocaine and possession with intent to distribute marijuana. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Allen v. State*, supra.

*Judgment affirmed. Deen, P. J., Birdsong, P. J., Sognier, Pope and Beasley, JJ., concur. Banke, C. J., McMurray, P. J., and Carley, J., dissent.*

McMURRAY, Presiding Judge, dissenting.

Defendants waived jury trial and their motion to suppress was considered on the basis of the evidence presented at trial. Dalton police Lieutenant Walthour testified that Jane Mercer (a motel desk clerk) told him "that . . . Bowman [another motel desk clerk] the second shift clerk, had asked her [Mercer] to contact us about a package that was placed in a safety deposit box, of sorts, at the motel by one of the guests there." Although the record contains the testimony of Bowman, giving a further description of the package and surrounding circumstances, there is no evidence of probative value that such information was conveyed to police prior to the stop. Bowman testified that she related this information to Mercer and was told by Mercer that the information had been passed on to police. However, Mercer's statement to Bowman that she relayed the information is clearly hearsay and of no probative value even in the absence of objection thereto. *Stamper v. State*, 235 Ga. 165, 169 (1) (219 SE2d 140).

Based on Walthour's conversation with Mercer, the Dalton police initiated an investigation and communicated with the Rome Police Department (the defendants' automobiles had Floyd County tags). The Rome Police Department sources advised that defendant Hubert Holbrook could possibly be involved in drug trafficking, that caution should be exercised in any dealings with him as he was known to carry a weapon, and that he had two sons, one of whom was Russell Holbrook who was a fugitive. The second defendant, Gary Neal Holbrook, is defendant Hubert Holbrook's other son but he was not the suspected fugitive.

Police were notified by an agent of the motel that defendants had checked out. A roadblock was set up at the exit from the motel. When the vehicles exited the motel, they were stopped at the roadblock.

By stopping the defendants' vehicles the police "seized" the defendants within the meaning of the Fourth Amendment. "To justify such intrusion, the state has to produce evidence of articulable facts which give rise to a suspicion that the law has been violated. Although this suspicion need not meet the standard of probable cause, it must be more than mere caprice or a hunch or an inclination. [Cit.]" *State v. Smith*, 137 Ga. App. 101, 102 (223 SE2d 30). Although defendant Hubert Holbrook apparently may carry a questionable rep-

utation within law enforcement circles, there is no evidence that officers had knowledge of circumstances from which they might reasonably conclude that criminal activity was afoot. The singular fact that defendant Hubert Holbrook had a son who was a fugitive, alone should not authorize an investigative inquiry which involves a seizure of defendant Hubert Holbrook's person and of any younger male person found in his company. Conspicuously absent from the record is any evidence as to the physical appearance of the fugitive son and any correlation of that description with the appearance of defendant Gary Neal Holbrook.

I would hold that the trial court erred in denying defendants' motion to suppress. *State v. Smith*, 137 Ga. App. 101, 102, supra; *Nix v. State*, 138 Ga. App. 122, 123 (3) (225 SE2d 714); *State v. Smith*, 164 Ga. App. 142 (296 SE2d 141). Therefore, I respectfully dissent.

I am authorized to state that Chief Judge Banke and Judge Carley join in this dissent.

DECIDED DECEMBER 3, 1985 —
REHEARING DENIED DECEMBER 19, 1985 —

*Harold N. Wollstein*, for appellants.
*Jacques O. Partain III, District Attorney, Steven M. Harrison, Assistant District Attorney*, for appellee.